## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ———————————————— | : | CIVIL ACTION |
| THERESA WEIRBACH and CHARLES | : | |
| ZIMMER on behalf of themselves | : | Case No. 5:19-CV-05310-JWD |
| and all others similarly situated, | : | |
|         Plaintiff, | : | *Honorable Joshua D. Wolson* |
| | : | |
|     v. | : | *Electronically Filed* |
| | : | |
| THE CELLULAR CONNECTION, LLC, | : | |
| | : | |
|         Defendant. | | |
| ———————————————— | | |


## DEFENDANT THE CELLULAR CONNECTION, LLC'S
## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
## CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE


On the brief:

    Steven F. Pockrass (admitted *pro hac vice*)
    Vik C. Jaitly (PA 061682013)

    **Ogletree Deakins Nash Smoak & Stewart, P.C.**

# Table of Contents

I.   Introduction ..................................................................................................1

II.  Procedural Background ...............................................................................1

III. Factual Background .....................................................................................2

    A.  TCC & Its Sales Representatives ............................................................2

    B.  TCC's Timekeeping Policies and Strict Prohibition Against Off-the-Clock Work ....................................................................................................4

    C.  TCC Regularly Made Adjustments to Time Records for Plaintiff and Opt-In Declarants for Various Reasons, Including Time Adjustments for Work Performed While Outside of Store. ...............................................5

    D.  Use of Group Messaging Application Varies Among Region and Store, Including the Type of Group Messaging Application Used and How the Application is Used. .........................................................................6

    E.  Conference Calls ...................................................................................8

    F.  Bank Deposits ......................................................................................9

IV. Legal Argument ..........................................................................................9

    A.  The Court Lacks Personal Jurisdiction to Conditionally Certify a Class That Includes Individuals Who Did Not Work for TCC in Pennsylvania or Reside in Pennsylvania at the Time They Were Employed by TCC. ...................9

    B.  Standard for Conditional Certification. ..............................................11

        1.  Plaintiff's Proposed Class ...........................................................12

        2.  Conditional Certification is Not Automatic and The Court Has Discretion to Deny Motions for Conditional Certification. .......................................13

        3.  Conditional Certification is Not Automatic: Plaintiff Must Provide "Some Evidence" That "Similarly Situated" Individuals Were Subjected to "A Single Decision, Policy, or Plan" That Violated the FLSA. ........................14

    C.  Plaintiff Has Failed to Meet Her Burden of Establishing an Unlawful Policy. .........16

    D.  Plaintiff's Motion Should be Denied Because She is Not Similarly Situated to Other Employees. ......................................................................17

**1. Plaintiff Does Not and Cannot Establish that She is Similarly Situated to Employees in Other Geographic Locations.** ...........................................................**18**

**E. Plaintiff's Motion Should Also Be Denied Because Alleged Liability and Damages In this Type of an Off-the-Clock Case Would Need to Be Analyzed on an Individualized Basis.** ...........................................................**20**

**F. There Is No Basis for Conditionally Certifying A Class Going Back Three Years** ..................................................................................................................**22**

**G. If the Court Decides to Facilitate Notice, the Court Should Limit the Proposed Class, Modify the Notice Proposed by Plaintiff, and Modify the Procedures Proposed by Plaintiff.** ...........................................................**23**

**V. Conclusion** ............................................................................................................**25**

## Table of Authorities

Cases

Aguirre v. SBC Commc'ns, Inc.,
   No. 05-3198, 2006 WL 964554 (S.D. Tex. Apr. 11, 2006) ..................................................... 15
Albanil v. Coast 2 Coast, Inc.,
   No. H-08-486, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) ............................................... 14,
Andel v. Patterson-UTI Drilling Company, LLC,
   No. 6:10-cv-36 (S.D. Tex. Mar. 16, 2011), Doc. 52 (Johnson, M.J.) memorandum and
   recommendation adopted, 280 F.R.D. 287 (S.D. Tex. 2012) ................................................. 15
Armstrong v. Weichert Realtors,
   Civ. A. No. 05-3120, 2006 WL 1455781 (D.N.J. May 19, 2006) ........................................... 14
Aufleger v. Eastex Crude Co.,
   No. 2:05-CV-310-J, 2006 WL 2161591 (N.D. Tex. July 31, 2006) ....................................... 18
Badgett v. Texas Taco Cabana, L.P.,
   No. H-05-3624, 2006 WL 2934265 (S.D. Tex. Oct. 12, 2006) ......................................... 14, 15
Bamgbose v. Delta-T Group, Inc.,
   684 F. Supp. 2d 660 (E.D. Pa. 2010) ................................................................................. 16, 17
Barth v. Walt Disney Parks & Resorts U.S., Inc.,
   206 F. Supp. 3d 1026 (E.D. Pa. 2016) ...................................................................................... 10
Bramble v. Walmart Stores, Inc.,
   2011 WL 1389510 (E.D. Pa. April 12, 2011) ............................................................................ 12
Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,
   137 S. Ct. 1773 (June 17, 2017) ................................................................................................ 10
Comcast Corp. v. Behrend,
   133 S. Ct. 1426 (2013) .......................................................................................................... 20, 21
D'Anna v. M.A.-Com, Inc.,
   903 F.Supp. 889 (D. Md. 1995) ................................................................................................ 14
Ellerd v. County of Los Angeles,
   No. CV 08-4289 CAS, 2009 WL 982077 (C.D. Cal. Apr. 9, 2009) ....................................... 20
England v. New Century Fin. Corp.,
   370 F. Supp. 2d 504 (M.D. La. 2005) ...................................................................................... 15
Garcia v. Nunn,
   2016 WL 1169560 (E.D. Pa. Mar. 25, 2016) ........................................................................... 11
Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC,
   C11-1959RAJ, 2013 WL 1661483 (W.D. Wash. Apr. 17, 2013) .......................................... 21
Goldstein v. Children's Hosp. of Philadelphia,
   Civ. A. No. 10-1190, 2012 WL 5250385 (E.D. Pa. Oct. 24, 2012) ....................................... 14
Guzelgurgenli v. Prime Time Specials Inc.,
   883 F.Supp.2d 340 (E.D.N.Y.2012) ......................................................................................... 24
H & R Block, Ltd. v. Housden,
   186 F.R.D. 399 (E.D. Tex. 1999) .............................................................................................. 14
Hall v. Burk,
   No. 3:01-CV-2487, 2002 WL 413901, 2002 U.S. Dist. LEXIS 4163, *5, 6 (N.D. Tex. Mar. 11,
   2002) ......................................................................................................................................... 13

Hallissey v. America Online, Inc.,
  2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) .......................................................... 24
Hamm v. TBC Corp.,
  597 F. Supp. 2d 1338 (S.D. Fla. 2009) ................................................................. 23
Harper v. Lovett's Buffet, Inc.,
  185 F.R.D. 358 (M.D. Ala. 1999) ......................................................................... 18
Harris v. Fee Transportation Servs.,
  No. 3:05-cv-0077-P, 2006 WL 1994586 (N.D. Tex. May 15, 2006) ................................ 13, 15
Hoffmann-La Roche Inc. v. Sperling,
  493 U.S. 165 (1989) ........................................................................................ 13, 14
Holt v. Rite Aid Corp.,
  333 F.Supp.2d 1265 (M.D. Ala. 2004) .................................................................. 15
Lusardi v. Xerox Corp.,
  122 F.R.D. 463 (D.N.J. 1988) .............................................................................. 19
Maclin v. Reliable Reports of Texas, Inc.,
  314 F. Supp. 3d 845 (N.D. Ohio 2018) ................................................................. 11
McLaughlin v. Richland Shoe Co.,
  486 U.S. 128, (1988) ........................................................................................ 22
Mooney Aramco Services Co., ,
  54 F.3d at 1214 ............................................................................................... 14
Moore v. PNC Bank, N.A.,
  2013 WL 2338251 (W.D. Pa. May 29, 2013) .......................................................... 12
Mussat v. IQVIA, Inc.,
  2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ........................................................... 11
Practice Management Support Services, Inc. v. Cirque du Soleil, Inc.,
  301 F. Supp. 3d 840 (N.D. Ill. 2018) .................................................................... 11
Prizmic v. Armour, Inc.,
  2006 WL 1662614 (E.D.N.Y. June 12, 2006) .......................................................... 16
Rafferty v. Denny's, Inc.,
  No. 5:18-cv-02409, 2019 WL 2924998 (N.D. Ohio July 8, 2019) .................................. 11
Ray v. Motel 6 Operating, Ltd. P'ship,
  No. 3-95-828, 1996 WL 938231 (D. Minn. Mar. 18, 1996) ......................................... 19
Reich v. Homier Distributing Co.,
  362 F.Supp.2d 1009 (N.D. Ind. 2005) .................................................................. 15
Rocha v. Gateway Funding Diversified Mortgage Servs., L.P.,
  2016 WL 3077936 (E.D. Pa. June 1, 2016) ............................................................ 12
Roy v. FedEx Ground Package System, Inc.,
  2018 WL 6179504 (D. Mass. Nov. 27, 2018) .......................................................... 11
Simmons v. T-Mobile USA, Inc.,
  No. 06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007) .......................................... 15
Smith v. Family Video Movie Club, Inc.,
  11 CV 1773, 2013 WL 1628176 (N.D. Ill. Apr. 15, 2013) ........................................... 21, 22
Songer v. Dillon Res., Inc.,
  569 F. Supp. 2d 703 (N.D. Tex. 2008) .................................................................. 14
Symczyk v. Genesis Healthcare Corp.,
  656 F.3d 189 (3d Cir. 2011) ............................................................................... 12

Treme v. HKA Enters., Inc.,
    No. 07-1134, 2008 WL 941777 (W.D. La. Apr. 7, 2008) ....................................... 16
Tucker v. Labor Leasing, Inc.,
    872 F. Supp. 941 (M.D. Fla. 1994) ....................................................................... 19
Vargas v. Gen. Nutrition Centers, Inc.,
    No. 2:10-CV-867, 2012 WL 5336166 (W.D. Pa. Oct. 26, 2012) ............................ 24
Zavala v. Wal-Mart Stores Inc.,
    691 F.3d 527 (3d Cir. 2012)........................................................................... 11, 17


Statutes

29 U.S.C. § 216................................................................................................... 13
29 U.S.C. § 216 (b) .............................................................................................. 13

Other Authorities

Travers v. Jetblue Airways Corp., No. 08-10730-GAO,
    2010 U.S. Dist. Lexis 103419 (D. Mass. Sept. 30, 2010)....................................... 18

Defendant, The Cellular Connection, LLC ("TCC" or "Defendant"), by and through undersigned counsel, respectfully presents this memorandum in opposition to Plaintiff's Motion for Conditional Certification filed on February 14, 2020.  (Doc. 22).

## I.    Introduction

Despite her light burden at the conditional certification stage, Plaintiff has fallen well-short of meeting it.  Courts in this District, in this Circuit, and outside this Circuit require an employee who claims to have performed off-the-clock work, and seeks conditional certification of a collective action, to show that she was a victim of an unlawful decision, policy, or plan and that the proposed class consists of similarly situated employees who were collectively the victims of that single, unlawful decision, policy, or plan.  Plaintiff has failed to establish either.  Rather, Plaintiff and Opt-In Declarants, all of whom are former TCC employees, have submitted eight declarations containing their own conclusory statements about performing off-the-clock work without providing any details as to the alleged unlawful decision, policy, or plan that supposedly caused them to perform off-the-clock work and not get compensated for such work.  Furthermore, Plaintiff has failed to demonstrate how she is similarly situated to other employees and fails to recognize the significant dissimilarities that would make conditional certification inappropriate. For these reasons, Plaintiff fails to meet her burden and this Court should deny Plaintiff's Motion.

## II.   Procedural Background

Theresa Weirbach ("Weirbach" or "Plaintiff") filed this lawsuit on November 12, 2019, asserting an alleged action under the Fair Labor Standards Act ("FLSA") for unpaid overtime compensation for work performed off-the-clock and for hours worked in excess of forty per week. (Doc. 1).  Plaintiff filed her Motion for Conditional Certification on February 14, 2020, asking the Court to conditionally certify a collective action and send notice to putative class members.

Defendant now files this response in opposition to Plaintiff's Motion for Conditional Certification.[1]

### III.    Factual Background

    A.    <u>TCC & Its Sales Representatives.</u>

TCC is an authorized reseller of Verizon cellular plans and phones with approximately 550 retail store locations throughout the United States and approximately 61 stores in the Commonwealth of Pennsylvania. [Doc. 17 ¶ 10-11]. TCC's stores currently are organized into districts, which are headed by District Managers, and into regions, which are headed by Regional Directors. During the past several years, there have been numerous restructurings, so the number of districts and regions, the assignment of specific stores to corresponding districts and regions, and the management structure at all levels all have varied and changed throughout this time period. Ex. 1, (Declaration of Mike Trimble ("M. Trimble Dec.") ¶ 7).[2] For example, from 2014 to 2017, TCC employed Market Managers with sales and operational duties related to a specific set of stores. This position does not exist anymore and the duties handled by a Market Manager are now handled by Store Managers or District Managers, depending on the store, district, or region.

---

[1] After filing her motion for conditional certification, Weirbach then moved for leave to file an Amended Complaint adding Charles Zimmer as a second named Plaintiff. That motion was granted by the Court on Feb. 27, 2020 (Doc. 27). For ease of reference, and because Weirbach was the only named Plaintiff at the time of filing of the conditional certification motion, Defendant shall refer to Weirbach as "Plaintiff" and shall refer to the other individuals whose declarations were submitted in conjunction with the conditional certification motion as "Opt-In Declarants."

[2] All declarations are attached as exhibits to the Declaration of Steven F. Pockrass, Esq., which accompanies this motion.

TCC employs Sales Consultants and Technical Advisors (collectively, "Sales Reps")[3], who are eligible for overtime wages if they work more than 40 hours in a week. (Declaration of Sarah Jennings ("S. Jennings Dec.") ¶ 8).  The primary job duties for Sales Reps are to sell Verizon Wireless data plans, cellular phones, and accessories to customers to meet their sales targets while they are working in their assigned stores.  Id.   In addition to this, and among other things, Sales Reps are expected to (1) make calls to existing TCC and Verizon customers to drive customer traffic in the store; (2) merchandise and maintain store cleanliness for overall appearance and customer experience; (3) check internal resources for the "latest communication and promotions during working hours" and (4) "ensure accuracy of timecard and hours worked."  (S. Jennings Dec. ¶ 9, Ex. A, Sales Consultant and Technical Advisor Job Expectations).

As discussed in greater detail below, while some stores, districts or regions may use a group messaging application to congratulate and motivate themselves and others with respect to making sales, there is no requirement that Sales Reps download or use a group messaging application.  (M. Trimble Dec. ¶ 15; S. Jennings Dec. ¶ 14).  Sales Reps do not have access to any company sales or customer information when they are not in the store, so they are unable to perform any meaningful work-related tasks while outside of the store.   (M. Trimble Dec. ¶ 22; Ex. 5, Declaration of Robin Fahey ("R. Fahey Dec.") ¶ 21; Ex. 6, Declaration of Zach Hess ("Z. Hess Dec.") ¶ 19; Ex. 8, Declaration of Nicki Vandyke ("N. Vandyke Dec.") ¶ 23; Ex. 10, Declaration of Kevin Schrouder (K. Schrouder Dec.") ¶ 21; Ex. 9, Declaration of Shawn Stemmler ("S. Stemmler Dec.") ¶ 21; and Ex. 7, Declaration of Jeff Falk ("J. Falk Dec.") ¶ 18).  For example, Sales Reps cannot access sales reports or customer information to follow-up on sales or to create

---

[3] TCC originally called these employees Sales Consultants until the Fall of 2016, when it changed the title of the position to Technical Advisors.  TCC changed the title of this position back to Sales Consultants in January 2019.  Ex. 2, (S. Jennings Dec. ¶ 6).

customer satisfaction during the customer complaint process.  (Id.).  Therefore, Sales Reps have

no need to use a group messaging application outside of their clock/in clock out times because

there is no actual work that was, is, or can be performed using the application when not physically

located at the store.

   B. <u>TCC's Timekeeping Policies and Strict Prohibition Against Off-the-Clock Work</u>.

  At present and throughout the time periods during which Plaintiff and those she seeks to

represent were employed, TCC has had numerous policies related to timekeeping which show that

TCC does pay, and has a good faith and bona fide desire to pay, for all time worked and to correct

any timekeeping errors that arise.  These policies include:

- Employee handbooks (current and past versions contain company policies and procedures that reflect the importance of accurately recording all time worked) (S. Jennings Dec. ¶ 11(i), Ex. B)
- Payroll Request for Pay Adjustment (<u>Id.</u> at ¶ 11(ii), Ex. C).
- Payroll Timecard Edit Request Form (<u>Id.</u> at ¶ 11(iii), Ex. D).
- RQ Desktop Logging In and Clocking In (<u>Id.</u> at ¶ 11(iv), Ex. E).
- RQ Desktop Punch Clock Revisions (<u>Id.</u> at ¶ 11(v), Ex. F).
- RQ Desktop Time Sheet Approval (<u>Id.</u> at ¶ 11(vi), Ex. G).
- Scheduler Clock In Clock Out Time Card Policy (<u>Id.</u> at ¶ 11(vii), Ex. H).
- Compensable Time Policy (<u>Id.</u> at ¶ 11(viii), Ex. I).
- HR Employee Clock In Clock Out & Store Open Close Policy (<u>Id.</u> at ¶ 11(ix), Ex. J).

 These policies ensure that Sales Reps know and understand that they are required to record

all time worked, that they are not to perform work while off-the-clock, that off-the-clock work is

"strictly prohibited," that if they are not able to clock-in/out for any reason or if there is any sort

of error with regard to their clock-in/clock out times that they are to report the error so it can be

corrected, that they are to review their time records to make sure they are accurate, and that they

are to report any time to their supervisors that has not been captured by TCC's timekeeping system.

(<u>See also</u> <u>id.</u> at ¶ 15, Ex. B) (expectations include ensuring accuracy of time records and hours

worked).

C.     <u>TCC Regularly Made Adjustments to Time Records for Plaintiff and Opt-In
Declarants for Various Reasons, Including Time Adjustments for Work Performed
While Outside of Store.</u>

Not only did TCC have timekeeping practices and policies in place to ensure that Sales

Reps were compensated for all hours worked, TCC made adjustments to time records for Plaintiff

and Opt-In Declarants for various reasons, including time adjustments for approved work

performed while outside of the store.  (R. Fahey Dec. ¶ 23; Z. Hess Dec. ¶ 23; N. Vandyke Dec. ¶

26; K. Schrouder Dec. ¶ 24; S. Stemmler Dec. ¶ 25-26; J. Falk Dec. ¶ 19-21).  For example,

supervisors (either Store Managers, Market Managers, District Managers, or Regional Directors

depending on region) would routinely adjust Sales Reps time records for accuracy when Sales

Reps did not remember to clock-in or clock-out at the beginning or the end of their shifts (R. Fahey

Dec. ¶ 23; Z. Hess Dec. ¶ 23; N. Vandyke Dec. ¶ 25;), when Sales Reps attended out of office

trainings or company-sponsored events (N. Vandyke Dec. ¶ 26; K. Schrouder Dec. ¶ 24; S.

Stemmler Dec. ¶ 25; J. Falk Dec. ¶ 20), or, in the rare instances where a Sales Rep had to attend a

meeting by phone because the Sales Reps lived quite far from the store location (K. Schrouder

Dec. ¶ 32).

Below are specific instances where time records were adjusted for accuracy for Plaintiff

and Opt-In Declarants:

- Theresa Weirbach – time adjustments made on 5/3/17, 5/7/17, 5/20/17, 8/22/17, 9/3/17, 10/9/17, 10/12/17 (**Texlertown Samsung workshop**), 10/12/17, 10/17/17, 10/22/17, 11/3/17, 12/13/17.  Ex 4, (Declaration of Randy Fink ("R. Fink Dec.") ¶ 6, Ex. A).

- Charles Zimmer – time adjustments made on 11/27/17, 12/9/17, 1/5/18, 1/12/18, 2/14/18, 2/15/18.  (Id. at ¶ 7, Ex. B).

- Derrick Boltz – time adjustments made on 11/18/16, 1/15/17, 8/7/17.  (Id. at ¶ 8, Ex. C).

- Gage Coon – time adjustments made on 2/15/16, 3/9/16, 5/5/16, 7/28/16, 8/3/16, 11/1/16, 12/13/16, 1/5/17, 1/24/17.  (Id. at ¶ 9, Ex. D).

- Michael Fristrom – time adjustments made on 6/2/16, 7/25/16, 8/6/16, 8/7/16, 8/11/16, 8/15/16, 8/30/16, 9/18/16, 11/2/16, 11/27/16, 12/24/16, 2/4/17, 5/10/17, 5/11/17, 6/3/17 (helped customer and lead to forgetting to punch in) 6/28/17, 7/18/17 (**attended training**), 7/20/17, 7/25/17, 8/11/17, 8/25/17, 9/1/17, 9/5/17, 9/21/17, 9/29/17 (**conference call**), 10/3/17 (stayed to hangout and didn't work and forgot to clock out) 10/6/17, 10/27/17 (**conference call**). (Id. at ¶ 10, Ex. E).

- Denise Ong – time adjustments made on 11/9/17 (forgot to punch out for lunch), 11/15/17 (**meeting**), 12/16/17, 2/28/18 (could not punch in after lunch). (Id. at ¶ 11, Ex. F).

- Robin Raymond – time adjustments made on 1/15-17/2013 (**new hire training class**), 11/11/2016 (hours submitted for "A Day in the Life" with Ryan Tierney), 1/19/17, 2/24/17, 3/3/17. (Id. at ¶ 12, Ex. G).

- Mitchell Sprouse – time adjustments made on 1/2/16, 6/22/16, 8/18/16, 1/9/17 (**manager in training**), 1/10/17 (**manager in training**), 6/9/17 (**store team meeting**), 9/20/17 (**Verizon meeting**), 12/15/17, (**ETR Training**), 1/10/18 (**training**). (Id. at ¶ 13, Ex. H).

- Jeffrey Washburn – time adjustments made on 9/21/15, 10/19/15, 10/29/15, 1/2/16, 11/28/17, 12/1/17, 2/3/18, 2/10/18. (Id. at ¶ 14, Ex. I).

As this evidence demonstrates, Plaintiff and Opt-In Declarants all knew that their time records could be adjusted to reflect the accurate number of hours they worked, and they communicated with supervisors and managers to make those adjustments, whether it was because the Sales Rep forgot to clock-in or clock-out or because they were attending a training or meeting outside of the store. Further, Plaintiff and several of the Opt-In Declarants also worked as Store Managers during their tenure with TCC and made time adjustments to clock-in or clock-out hours for various Sales Reps who worked in their stores. (R. Fink Dec. ¶ 16, Ex. J) (demonstrating that Weirbach, Sprouse, and Fristrom knew how to and did make time adjustments to accurately reflect the time worked by the Sales Reps in their stores).

     D.     <u>Use of Group Messaging Application Varies Among Region and Store, Including the Type of Group Messaging Application Used and How the Application is Used.</u>

Plaintiff and Opt-In Declarants allege that TCC requires Sales Reps to use a group messaging application to communicate about work matters while outside the store and off the

clock, and this caused them to spend substantial time monitoring, reviewing, and responding to work messages on GroupMe when they were not clocked in.  (Pl. Memo. at p. 2).  This is not true. TCC does not have any policy requiring that any of its employees use any group messaging application. (M. Trimble Dec. ¶ 14; S. Jennings Dec. ¶ 14).  Although group messaging applications often are used, Sales Reps were not and are not required to use GroupMe or any other group messaging application.  (M. Trimble Dec. ¶ 15; S. Jennings Dec. ¶ 14).

Some stores do not use GroupMe, but use other group messaging applications (Z. Hess Dec. ¶ 14, S. Stemmler Dec. ¶ 16).  Whether stores use a group messaging application or not is in the sole discretion of Regional Directors, District Managers, or individual Store Managers (M. Trimble Dec. ¶ 16; R. Fahey Dec. ¶ 18; Z. Hess Dec. ¶ 13; N. Vandyke Dec. ¶ 14; K. Schrouder Dec. ¶ 14; S. Stemmler Dec. ¶ 14, J. Falk Dec. ¶ 13).  Whether a particular store uses a group messaging application, which application is used, how frequently the application is used, and for what purpose the application is used all varies from store-to-store.  (M. Trimble Dec. ¶ 17; R. Fahey Dec. ¶ 15; Z. Hess Dec. ¶ 14;  N. Vandyke Dec. ¶ 15; K. Schrouder Dec. ¶ 15; S. Stemmler Dec. ¶ 16; J. Falk Dec. ¶ 14).  For example, some Regional Directors do not require District Managers or Store Managers in their region to use any group messaging application.  (R. Fahey Dec. ¶ 14-15; K. Schrouder Dec. ¶ 14; J. Falk Dec. ¶ 15).  And there are Sales Reps who do not use any group messaging application or mute their group messaging application so that they do not receive any messages, all without any adverse consequences.  (M. Trimble Dec. ¶ 19; R. Fahey Dec. ¶ 18; Z. Hess Dec. ¶ 16; N. Vandyke Dec. ¶ 19; K. Schrouder Dec. ¶ 18; S. Stemmler Dec. ¶ 18; J. Falk Dec. ¶ 13).

If a group messaging application is used, the main purpose of the application generally is to recognize and celebrate certain individuals for sales and to encourage in-store product/service

promotions (R. Fahey Dec. ¶ 16; J. Falk Dec. ¶ 15; K. Schrouder Dec. ¶ 16; N. Vandyke Dec. ¶ 16).  It may also be used for contest updates and alerts for potential fraud situations.  (M. Trimble Dec. ¶ 18).  Some Sales Reps are heavily motivated and use the application regularly, while others mute the application and do not use it at all.  (J. Falk Dec. ¶ 16; R. Fahey Dec. ¶ 17; S. Stemmler Dec. ¶ 17).  Most, if not all, of the activity on any group messaging application, occurs when the stores are open and Sales Reps are working in the stores.  (J. Falk Dec. ¶ 16; R. Fahey Dec. ¶ 17; S. Stemmler Dec. ¶ 17; Z. Hess Dec. ¶ 15; N. Vandyke Dec. ¶ 18; K. Schrouder Dec. ¶ 17).  There is little-to-no activity after store hours, and there is no need for a Sales Rep to check or use the group messaging application while away from the store.  (J. Falk Dec. ¶ 16-18; R. Fahey Dec. ¶ 17; S. Stemmler Dec. ¶ 20; Z. Hess Dec. ¶ 15; N. Vandyke Dec. ¶ 18; K. Schrouder Dec. ¶ 17).

     E.    <u>Conference Calls</u>

There is no common practice for all stores, districts or regions to conduct regularly scheduled conference calls or meetings.  (M. Trimble Dec. ¶ 27).  The nature, frequency, and length that any region, district and/or store held or holds meetings and conference calls all varies by manager.  (M. Trimble Dec. ¶ 28; R. Fahey Dec. ¶ 30; Z. Hess Dec. ¶ 27; N. Vandyke Dec. ¶ 33; K. Schrouder Dec. ¶ 33).  For example, Jeff Falk does not hold routine conference calls (J. Falk Dec. ¶ 25); Robin Fahey holds routine calls but they are not on fixed dates (R. Fahey Dec. ¶ 30); and Kevin Schrouder holds conference calls every Friday morning.  (K. Schrouder Dec. ¶ 29).  Others, like Nicki Vandyke, hold conference calls but only requires those Sales Reps who are scheduled to work in-store that day to be on the conference calls.  (N. Vandyke Dec. ¶ 32).

It is extremely rare for Sales Reps to participate in any of these calls or meetings while outside the store because the Sales Reps are usually at the store as a group for these calls and meetings, which normally are conducted during store operating hours.  (R. Fahey Dec. ¶ 31; Z. Hess Dec. ¶ 28; N. Vandyke Dec. ¶ 34; K. Schrouder Dec. ¶ 31; J. Falk Dec. ¶ 27; S. Stemmler

Dec. ¶ 30).  In a situation where a Sales Rep needs to take a conference call from outside the store, either the Store Manager, Market Manager, District Manager, or Regional Manager (depending on region), would adjust the time records to reflect the time spent on the conference call.  (Z. Hess Dec. ¶ 28; J. Falk Dec. ¶ 27; K. Schrouder Dec. ¶ 32).

       F.    <u>Bank Deposits</u>.

Up until October 2018, various employees would be responsible for and make bank deposits as part of the store closing process.  Ex. 3, (Declaration of Tim Springer ("T. Springer Dec.") ¶ 6).  Since the stores close in the evenings, TCC decided for safety reasons that it would be better for bank deposits to be made during daylight hours and regular banking hours.  (<u>Id.</u> at ¶ 7).  Therefore, in December 2016, TCC adopted a new policy under which bank deposits would be made during the day on or before 2 pm.  (<u>Id.</u> at ¶ 8).  In the event that a Sales Rep made the bank deposit, there would have been no need or reason for that Sales Rep to clock out during that time, as it would have occurred during the Sales Rep's shift.  (<u>Id.</u> at ¶ 9).

In October 2018, the policy further changed, and store employees no longer made bank deposits.  (<u>Id.</u> at ¶ 10).  Instead, a parcel service was hired to pick up cash during the workday and make bank deposits on behalf of TCC. (<u>Id.</u> at ¶ 10).  In summary, making an after-hours bank deposit would have violated company policy any time on or after December 2016, and the practice of having store employees make bank deposits was discontinued in October 2018.

## IV.   Legal Argument

    **A.    The Court Lacks Personal Jurisdiction to Conditionally Certify a Class That Includes Individuals Who Did Not Work for TCC in Pennsylvania or Reside in Pennsylvania at the Time They Were Employed by TCC.**

Plaintiff is seeking to conditionally certify a class that would include current and former Sales Reps who never worked or lived in Pennsylvania while employed by TCC.  As an initial

matter, this court could not certify such a broad class based on jurisdictional grounds pursuant to recent U.S. Supreme Court precedent.

In <u>Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.</u>, 137 S. Ct. 1773 (June 17, 2017), the Supreme Court established limitations on personal jurisdiction over non-resident defendants in "mass actions," holding that plaintiffs cannot simply "forum shop" in these types of cases and instead must sue where the corporate defendant has significant contacts for purposes of general jurisdiction or limit the class definition to residents of the state where the lawsuit is filed.[4]

Applying <u>Bristol-Myers</u> to proposed FLSA collective actions, various federal courts have held that they have only limited personal jurisdiction with respect to the class that could ever be certified. Consistent with these decisions, should this Court decide to conditionally certify a class, such a class cannot include anyone who did not either work for TCC in Pennsylvania or live in Pennsylvania at the time they worked for TCC. <u>See, e.g.</u>, <u>Chavira v. OS Restaurant Servs., LLC</u>, Case No. 18-cv-10029, D. Mass, Sept. 30, 2019 (applying <u>Bristol-Myers</u> and holding that "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum state'" and adopting that the personal jurisdiction analysis applies to all opt-in plaintiffs in a collective action in the same way that the Supreme Court found that the personal jurisdiction analysis applies to each plaintiff in a mass tort action); <u>Vallone v. The CJS Solutions Group</u>, Civ. No. 19-1532 (D. Minn. June 10, 2019) (holding that it

---

[4] There is no dispute that TCC is an Indiana corporation with its principal place of business in Indiana (*see* Complaint and Answer at paragraph 9 [Doc. 1, Doc. 17]), so Indiana would be the state where TCC has significant contacts for purposes of general jurisdiction. <u>See</u> <u>Barth v. Walt Disney Parks & Resorts U.S., Inc.</u>, 206 F. Supp. 3d 1026, 1029 (E.D. Pa. 2016), aff'd, 697 F. App'x 119 (3d Cir. 2017) ("Regarding a corporate defendant, the paradigm bases for general jurisdiction are the place of incorporation and the principal place of business.").

lacked personal jurisdiction over the company as to FLSA claims with no connection to Minnesota based on <u>Bristol-Myers</u>'s application).

Similarly, in <u>Roy v. FedEx Ground Package System, Inc.</u>, 2018 WL 6179504 (D. Mass. Nov. 27, 2018), the District Court applied <u>Bristol-Myers</u> to a nationwide FLSA collective action and limited opt-in notices to drivers who worked in Massachusetts.  In reaching its decision, the court emphasized that "[n]othing in <u>Bristol-Myers</u> suggests that its basic holding is inapplicable to class actions."  This view was also recently taken by the courts in <u>Practice Management Support Services, Inc. v. Cirque du Soleil, Inc.</u>, 301 F. Supp. 3d 840 (N.D. Ill. 2018) ("It is not clear how Practice Management can distinguish the Supreme Court's basic holding in <u>Bristol–Myers</u> simply because this is a class action.") and <u>Mussat v. IQVIA, Inc.</u>, 2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ("Whether it be an individual, mass, or class action, the defendant's rights should remain constant.").

In <u>Maclin v. Reliable Reports of Texas, Inc.</u>, 314 F. Supp. 3d 845 (N.D. Ohio 2018), the district court held that "<u>Bristol-Myers</u> applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of [out-of-state] plaintiffs against [the defendant]." 314 F. Supp. 3d at 850; <u>see also</u> <u>Roy</u>, 353 F. Supp. 3d at 55–61 (adopting <u>Maclin</u>); <u>Rafferty v. Denny's, Inc.</u>, No. 5:18-cv-02409, 2019 WL 2924998, at *3–7 (N.D. Ohio July 8, 2019) (also adopting <u>Maclin</u>); [ECF No. 45 at 7–13; ECF No. 63 at 7–9].

### B.    Standard for Conditional Certification.

The Third Circuit has outlined a two-step process for deciding whether a case may proceed as a collective action under the FLSA.  <u>Zavala v. Wal-Mart Stores Inc.</u>, 691 F.3d 527, 535–36 (3d Cir. 2012).  To prevail at the first stage—conditional certification—the Plaintiff must make a "modest factual showing" that the proposed class consists of similarly situated employees who were collectively the victims of a single, unlawful decision, policy, or plan. <u>Garcia v. Nunn</u>, 2016

WL 1169560, at *4 (E.D. Pa. Mar. 25, 2016) (internal quotation omitted); <u>Rocha v. Gateway Funding Diversified Mortgage Servs., L.P.</u>, 2016 WL 3077936, at *3, 5-7 (E.D. Pa. June 1, 2016) (citation omitted).  Although this standard is "fairly lenient," it nonetheless requires that Plaintiff "produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged [unlawful] policy affected [them] and the manner in which it affected other employees."  <u>Symczyk v. Genesis Healthcare Corp.</u>, 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds <u>Genesis Healthcare Corp. v. Symczyk</u>, 133 S. Ct. 1523 (2013).

When there is compelling evidence that the FLSA claims of individual Sales Reps will not "rise or fall together" based on the same evidence, the Court may properly conclude that litigating this matter as a collective action would be both inefficient and inappropriate. <u>Bramble v. Walmart Stores, Inc.</u>, 2011 WL 1389510, at *8 (E.D. Pa. April 12, 2011) (internal quotations omitted). Certification at the notice stage "is not automatic," and "courts have not hesitated to deny conditional certification when evidence is lacking." <u>Moore v. PNC Bank, N.A.</u>, 2013 WL 2338251 (W.D. Pa. May 29, 2013) (citation omitted).

### 1.     Plaintiff's Proposed Class.

Plaintiff's proposed class would consist of all current and former Sales Reps throughout the United States who work or worked for TCC from February 14, 2017, through the date of the Court's order on conditional certification.  As noted above, the Court lacks personal jurisdiction to certify such a broad class, but even if it did have such jurisdiction, Plaintiff has failed to meet the standard for conditionally certifying this class, or any class, for each of several reasons.

Plaintiff's Motion should be denied because Plaintiff cannot show that all current and former Sales Reps throughout the U.S. were and are uniformly subjected to an ***unlawful*** decision, policy, or plan; because Plaintiff cannot show that they were and are ***similarly subjected*** to the alleged unlawful decision, policy, or plan; and because Plaintiff cannot show that they were and

are *similarly situated* with respect to the elements of their off-the-clock work claim. Not all individuals allegedly performed the same type of off-the-clock work, nor did they allegedly perform such off-the-clock work for any uniform or consistent amounts of time that would make it feasible to move forward with this case on a nationwide class basis. There was no policy to violate the FLSA, or that would have caused an FLSA violation, and because every claim would be so individualized, any class of any geographical or temporal scope would be inappropriate.

**2.     Conditional Certification is Not Automatic and The Court Has Discretion to Deny Motions for Conditional Certification.**

The FLSA provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216 (b). The express language of the FLSA does not provide for conditional collective action certification or the distribution of judicially approved notice to putative plaintiffs. See 29 U.S.C. § 216; see also Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 176 (1989) (Scalia, J., dissenting). However, the United States Supreme Court has recognized that district courts "have *discretion*, in *appropriate* cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." Hoffman-La Roche, 493 U.S. at 167 (emphasis added).

Conditional certification of a collective action is left solely to the Court's discretion. "[N]otice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." Harris v. Fee Transportation Servs., No. 3:05-cv-0077-P, 2006 WL 1994586, *2 (N.D. Tex. May 15, 2006). "The relevant inquiry is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion." Hall v. Burk, No. 3:01-CV-2487, 2002 WL 413901, 2002 U.S. Dist. LEXIS 4163, *5, 6 (N.D. Tex. Mar. 11, 2002).

13

Plaintiff bears the burden of proof on a motion for conditional certification and must persuade the Court with admissible evidence not only that similarly situated individuals exist, but that sending notice to these individuals is a worthwhile exercise of the Court's discretion.  See, e.g., Badgett v. Texas Taco Cabana, L.P., No. H-05-3624, 2006 WL 2934265, at *1-2 (S.D. Tex. Oct. 12, 2006) (citing H & R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999); D'Anna v. M.A.-Com, Inc., 903 F.Supp. 889, 893-94 (D. Md. 1995)).  Courts should allow collective actions only when "common issues of law and fact arising from the same alleged … activity" promote efficiency and judicial economy.  Hoffman-La Roche, 493 U.S. at 170.

3.      **Conditional Certification is Not Automatic:  Plaintiff Must Provide "Some Evidence" That "Similarly Situated" Individuals Were Subjected to "A Single Decision, Policy, or Plan" That Violated the FLSA.**

At the initial notice stage, Plaintiff "must provide the court with some evidence (a 'reasonable basis') showing that the defendants subjected a group of similarly situated potential class members to a 'single decision, policy or plan' violating the provisions of the FLSA."  Albanil v. Coast 2 Coast, Inc., No. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008); see also Armstrong v. Weichert Realtors, Civ. A. No. 05-3120, 2006 WL 1455781, at *1 (D.N.J. May 19, 2006) (denying plaintiff's motion for conditional certification of an FLSA overtime collective where the only evidence submitted by plaintiff in support of certification was based on vague and general statements about general policies without identifying a specific policy or practice.); Goldstein v. Children's Hosp. of Philadelphia, Civ. A. No. 10-1190, 2012 WL 5250385, at *5 (E.D. Pa. Oct. 24, 2012) (denying motion for conditional certification where the plaintiff "provided no direct evidence ... that other employees were similarly situated to her with respect to [defendant's] policies and practices"); Mooney v. Aramco Services Co., 54 F.3d at 1214, n.8; Songer v. Dillon Res., Inc., 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (quoting Housden, 186

F.R.D. at 400).  A court may deny a plaintiff's attempt to proceed collectively if the action does not arise from any generally applicable rule, policy, or practice.  See, e.g., Simmons v. T-Mobile USA, Inc., No. 06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007); Aguirre v. SBC Comm'ns, Inc., No. 05-3198, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006); England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

Courts typically decline to conditionally certify a collective action when the determination necessary to resolve the dispute would require a highly individualized inquiry.  See, e.g., Andel v. Patterson-UTI Drilling Company, LLC, No. 6:10-cv-36 (S.D. Tex. Mar. 16, 2011), Doc. 52 (Johnson, M.J.) memorandum and recommendation adopted, 280 F.R.D. 287 (S.D. Tex. 2012) (recommending denial of motion for conditional certification of FLSA collective action on the basis that the plaintiffs' claims "must necessarily be resolved on a case-by-case basis"); Fee Transportation Servs., 2006 WL 1994586, at *2; Aguirre v. SBC Comm'ns, Inc., No. H-05-3198, 2006 WL 964554, at *7 (S.D. Tex. Apr. 11, 2006) (finding conditional certification inappropriate where differences among the potential plaintiffs predominated over their similarities); Holt v. Rite Aid Corp., 333 F.Supp.2d 1265, 1274-75 (M.D. Ala. 2004) (refusing to conditionally certify collective action where individualized nature of the potential plaintiffs' claims would diminish "the economy of scale envisioned by the FLSA collective action procedure"); Reich v. Homier Distributing Co., 362 F.Supp.2d 1009, 1013-14 (N.D. Ind. 2005) (refusing to conditionally certify collective action where defendant's liability to any particular plaintiff would depend on a set of facts specific to that individual).

Although the first stage of the test "is lenient, **it is not automatic**."  Badgett, 2006 WL 2934265, at *2 (emphasis added). Even in cases where the parties have conducted little discovery and the court has minimal evidence before it, courts still require some evidence of a common,

unlawful policy beyond conclusory assertions in pleadings, affidavits, or declarations.  Albanil, 2008 WL 4937565, at *3; Treme v. HKA Enters., Inc., No. 07-1134, 2008 WL 941777 (W.D. La. Apr. 7, 2008) ("[U]ncorroborated assertions, without more, do not fulfill the plaintiff's burden."); Aguirre, 2006 WL 964554, at *19 (holding that brief and conclusory statements in plaintiffs' complaint and motion for notice are insufficient); Prizmic v. Armour, Inc., 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (noting that merely accepting conclusory allegations could lead to a "frivolous fishing expedition conducted by the plaintiff at the employer's expense").

When analyzing a motion for conditional certification of a collective action, the Court "must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in" with respect to the plaintiff's claims. Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010).  "Although class action certification is procedural, determining whether it should be applied in a given case cannot be done in a vacuum. The manner and scope of its application depends upon the nature and purpose of the substantive law to be enforced, *i.e.*, in the context of the substantive law of the asserted claims."  See Andel at Doc. 52 (recommending denial of motion for conditional certification of FLSA collective action on the basis that the Plaintiffs' claims "must necessarily be resolved on a case-by-case basis").

### C.     Plaintiff Has Failed to Meet Her Burden of Establishing an Unlawful Policy.

Plaintiff argues that TCC maintains a common policy and practice not to pay Sales Reps for all time worked while outside of the store and that Plaintiff and all Sales Reps are similarly situated in their duties, are similarly compensated, and are similarly deprived of overtime pay.  (Pl. Memo. at 2-4).  In support of this assertion, Plaintiff argues that because all Sales Reps perform the same job duties and use the same timekeeping system, they are subject to some uniform policy or practice not to pay Sales Reps for work performed while outside the store.  (Pl. Memo. at 5-8).

Plaintiff has not met her burden with regard to this first step because she fails to offer any evidence that Sales Reps were victims of an unlawful TCC policy or practice that caused Sales Reps to not get paid for all hours they worked.  See Zavala, 691 F. 3d at 536. (a court "must make a preliminary determination [concerning] whether the named plaintiffs have made a 'modest factual showing' that the employees identified in the [ ] complaint are 'similarly situated' *with respect to the alleged policy*.") (emphasis added).  Plaintiff also fails to offer any meaningful evidence that TCC maintained an unlawful policy not to pay Sales Reps for work performed while outside the store.  Plaintiff and Opt-In Declarants do not provide any specifics as to an unlawful company policy that caused them to perform work off the clock or that precluded Sales Reps from getting compensated for work they performed while outside the store.  Plaintiff's Complaint and these conclusory declarations do not evince a single decision, policy, or plan causing the putative plaintiffs to work off the clock. Accordingly, collective action certification is inappropriate.

### D.     Plaintiff's Motion Should be Denied Because She is Not Similarly Situated to Other Employees.

As discussed above, when considering a motion for conditional certification, the Court "must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in" with respect to Plaintiff's claims.  Bamgbose, 684 F. Supp. 2d at 668-69.  Here, Plaintiff is seeking to certify an extremely broad class, consisting of anyone who currently works or ever worked as a Sales Rep at any TCC store at any time in any state anywhere in the country going back three years.  There are numerous reasons, discussed below, as to why Plaintiff is not similarly situated with respect to anyone she seeks to represent.  Alternatively, if the Court does decide to conditionally certify a class, it must be much more limited in terms of geographical scope, temporal scope, and other criteria.

17

1.    **Plaintiff Does Not and Cannot Establish that She is Similarly Situated to Employees in Other Geographic Locations.**

Plaintiff is asking the Court to issue notice to former and current Sales Reps from all TCC stores across the country, but Plaintiff has failed to demonstrate that she is similarly situated to other Sales Reps in other geographic locations.  Each region has a different Regional Director, each district has a different District Manager, and some stores have Store Managers.  These individuals have discretion whether to use a group messaging application, which application to use, for what purpose to use the application, whether to conduct conference calls during store hours, and who is required to be on these conference calls.  As for bank deposits, the last time that TCC even had a policy that allowed store employees to make bank deposits was in 2018, and before that, bank deposits were to be made during the workday, not after hours, so any after-hours deposit would itself have been a violation of company policy.  Each of these dissimilarities across regions and stores shows that Plaintiff is in fact dissimilar to other Sales Reps across the country.

Courts frequently cite dissimilarities among different geographic locations as a reason for denying a motion for conditional certification or limiting the scope to a single location.  See, e.g., Aufleger v. Eastex Crude Co., No. 2:05-CV-310-J, 2006 WL 2161591, at *1 (N.D. Tex. July 31, 2006) (denying conditional certification where plaintiffs had limited, if any, knowledge of other locations); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 363 (M.D. Ala. 1999) (limiting scope of collective action to a single location where employees "at different restaurants, in different states, for different managers, and, most likely, in quite different working conditions"); Travers v. Jetblue Airways Corp., No. 08-10730-GAO, 2010 U.S. Dist. Lexis 103419 (D. Mass. Sept. 30, 2010) (denying conditional certification to skycaps who alleged a violation of the tip-credit minimum wage because the plaintiffs failed to show the existence of similarly situated skycaps at JetBlue terminals outside of Boston); Ray v. Motel 6 Operating, Ltd. P'ship, No. 3-95-828, 1996

WL 938231, * 4 (D. Minn. Mar. 18, 1996) (declining to allow notice to be sent to employees nationwide based on differences between employees across geographic locations); Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 947-49 (M.D. Fla. 1994) (granting motion as to other clerical employees at same terminal, but holding that employees failed to establish that clerical employees at other locations were similarly situated, where wage rates and shift decisions were determined on a terminal-by-terminal basis by different terminal managers); Lusardi v. Xerox Corp., 122 F.R.D. 463, 465 (D.N.J. 1988) (decertifying collective action because the "members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices" and noting they "performed different jobs at different geographic locations").

Here, Plaintiff attempts to pursue a nationwide collective action. Plaintiff has provided declarations of Opt-Ins who worked in other states, but these declarations fail to provide any allegations, much less "substantial allegations," demonstrating that they are similarly situated to Plaintiff in how the Store Managers, District Managers and Regional Directors managed their stores, districts and regions, purported work they actually performed on GroupMe, and resulting pay practices.  Consistent with the cases discussed above, this matter should not be certified as a collective action because it would require a fact-specific and individualized inquiry into each employee's store, district and/or region, and how that store, district and/or region operated under different managers and at different times.

Moreover, it would not even be appropriate to certify a collective action for the store at which Weirbach worked, seeing as she actually was a Store Manager for nearly the final year of her employment with TCC and therefore would have an inherent conflict in her ability to provide

credible and honest testimony.[5]  *See* <u>Ellerd v. County of Los Angeles</u>, No. CV 08-4289 CAS, 2009 WL 982077, at *4-5 (C.D. Cal. Apr. 9, 2009) (excluding supervisors from the proposed class seeking overtime compensation for off-the-clock work where supervisors were responsible for monitoring and approving junior employees' hours).

      **E.**    **Plaintiff's Motion Should Also Be Denied Because Alleged Liability and Damages In this Type of an Off-the-Clock Case Would Need to Be Analyzed on an Individualized Basis.**

The fact-intensive nature of determining alleged liability and damages in this case further weighs against conditional certification, consistent with <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426 (2013).  Although Plaintiff's counsel may contend this is solely a merits determination and should not be considered as part of the certification process, that is not true.

In <u>Comcast</u>, the Supreme Court overturned a Third Circuit decision that upheld certification of a class of more than two million former and current Comcast cable subscribers. The Supreme Court found that the plaintiffs' damages model did not and could not establish injury and damages through common proofs.

> Respondents' class action was improperly certified under Rule 23(b)(3). By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry. And it is clear that, under the proper

---

[5] Weirbach originally stated in her Complaint that she had worked as a Sales Rep from approximately May 2017 to June 2018 at a store in Allentown, and she made no mention of ever having been a Store Manager.  (Complaint, para. 6 [Doc. 1]).  In its Answer, Defendant pointed out that Weirbach actually was a Sales Rep only from May 1, 2017, until January 20, 2018, when she was promoted to Store Manager.  (Answer, para. 6 [Doc. 17]).  In her declaration, Weirbach admits that she was a Sales Rep from approximately May to January, which is a period of only about 7 months, and then was a Store Manager from January 2018 until approximately November 2018.  She says in a footnote to her declaration that she "mistakenly" stated in her Complaint that she worked until about June 2018 as a Sales Representative but provides no explanation as to how she could have forgotten that she worked even longer as a Store Manager.

standard for evaluating certification, respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis.

Comcast, 133 S. Ct. at 1432-33.

Parallel reasoning has been applied in the wage-hour context, particularly in off-the-clock cases. For example, the Third Circuit recently concluded that class treatment was inappropriate where employees were alleging off-the-clock work in violation of Pennsylvania state wage-hour laws because "any claim that an employee was working off-the-clock would require an individualized inquiry as to when and to what extent that happened." Ferreras v. American Airlines, Inc., Civ. No. 16-02427 (3d. Cir. 2019).

Similarly, in Smith v. Family Video Movie Club, Inc., 11 CV 1773, 2013 WL 1628176 (N.D. Ill. Apr. 15, 2013), a pre-Comcast case, former employees of a video rental store chain attempted to pursue class action claims, alleging that their former employer violated the Illinois Minimum Wage Law by requiring them to perform off-the-clock work and by miscalculating overtime. The court noted, based on the evidence presented, that whether a putative class member was required to make off-the-clock bank deposits or run errands without pay varied depending upon the particular store and personnel working at the store. Consequently, due to the location and management-dependent nature of their claims, the court determined that the plaintiffs' claims were not susceptible to class-wide proofs. Id. at *6-7. Therefore, the court denied the plaintiffs' motion for class certification. See also Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC, C11-1959RAJ, 2013 WL 1661483 (W.D. Wash. Apr. 17, 2013) (denying class certification in case involving alleged violation of Washington wage-hour laws on the grounds that "the legal and factual questions common to class members [did] not predominate over questions affecting only individual class members.").

Although these cases involved state wage-hour law and Rule 23, the underlying rationale for denying certification is just as applicable, if not more applicable, when a plaintiff is seeking to certify a multistate or nationwide class (as opposed to a class limited to only one state) as part of an FLSA collective action when there is substantial variability with respect to exactly what these former employees allegedly were doing, whether any of it was actually work or not, and for how long they were doing these various activities.  Here, Plaintiff and Opt-In Declarants are similar to the plaintiffs in <u>Smith</u> because they are alleging they performed various off-the-clock activities without compensation.  The types of activities that Plaintiff and Opt-In Declarants allegedly performed not only would vary from store to store and based on who managed that store, but also would vary from person to person, from day to day, and from week to week.  Based on their allegations, further variations could exist from district to district and from region to region, all depending on who headed the district or region at any given time.  (M. Trimble ¶ 16-17).

**F.      There Is No Basis for Conditionally Certifying A Class Going Back Three Years.**

Even if this Court were to conditionally certify a class of some geographical scope, Plaintiff has not met her burden to show willfulness, which is required for a three-year statute of limitations to apply as opposed to the standard two-year limitation period.   The Supreme Court has addressed the meaning of word "willful" as used in the statute of limitations applicable to enforce the FLSA. <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, (1988).  In <u>McLaughlin,</u> the Court concluded that a violation of the FLSA was willful if the employer "showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]" <u>Id.</u> at 132-33. (citations and internal quotation marks omitted).  Here, Plaintiff has provided no evidence to support her contention that TCC knew or "showed reckless disregard" that Sales Reps were working off the clock and not getting compensated for such work.  To the contrary, as described above, TCC has policies and

procedures in place to ensure that Sales Reps are compensated for all hours worked.  More specifically, Plaintiff and other Opt-In Declarants were in fact paid for training and calls they participated in while they were outside of the store.  See supra, § III(C).

G.     **If the Court Decides to Facilitate Notice, the Court Should Limit the Proposed Class, Modify the Notice Proposed by Plaintiff, and Modify the Procedures Proposed by Plaintiff.**

In the event the Court does decide to conditionally certify a class in this case, Defendant further opposes the scope, procedures, and notice proposed by Plaintiff as follows:

First, the Court should deny Plaintiff's request to produce names, addresses, telephone numbers and email addresses to Plaintiff's counsel.  Instead, TCC requests that it only be required to produce last known names and addresses, and that these be provided to a third-party administrator.  This will ensure that the process proceeds smoothly, without delay, and without requiring the Court's attention to address any disputes about the issuance of the notice or the collection and filing of any consents, as well as reduce the risk of potential harassment of putative class members who may not want to participate.  See Hamm v. TBC Corp., 597 F. Supp. 2d 1338 (S.D. Fla. 2009), aff'd, 345 F. App'x 406 (11th Cir. 2009) (sanctioning The Shavitz Law Group for unethically calling the personal cell phones of defendant's employees and asking if they would be interested in joining the lawsuit).

Second, the putative collective should not include anyone who was hired after the last date of employment of Plaintiff and Opt-In Declarants because Plaintiff and Opt-In Declarants have no knowledge of and are not familiar with TCC's current policies and procedures.  Therefore, if a class is certified, it should exclude any Sales Reps that were hired on or after November 30, 2018.

Third, the class should not include anyone who also worked as a Store Manager or higher level manager for TCC during the relevant time period.  Inclusion of these individuals would create

an inherent conflict of interest because they were responsible for upholding and enforcing compliance with TCC policies and procedures as to other members of the putative class.

Fourth, it is not necessary for the notice to be emailed to putative class members nor should the notice be posted in TCC retail locations. Plaintiff has made no showing that mailing notices to the putative collective members would be insufficient. See Vargas v. Gen. Nutrition Centers, Inc., No. 2:10-CV-867, 2012 WL 5336166, at *13 (W.D. Pa. Oct. 26, 2012) (denying plaintiffs' requests to send notice via email and to require the company to post notice at its locations; plaintiffs did not offer "any persuasive justification that notification by first-class mail would be inadequate" and no evidence that putative class members were difficult to determine or contact.).

Fifth, Plaintiff's proposed notice should be amended because it fails to inform potential opt-ins of their right to retain their own counsel. See Hallissey v. America Online, Inc., 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008) (requiring consent forms to be mailed to the Court because of concerns that a contrary ruling might discourage individuals from retaining their own counsel).

Sixth, Plaintiff's proposed notice fails to state TCC's position with respect to Plaintiff's allegation. The notice should be revised to state: "The Cellular Connection denies these allegations and The Cellular Connection claims that Sales Representatives and Technical Advisors received wages for all hours worked, including overtime wages."

Seventh, Plaintiff provides a proposed Reminder Postcard but provides no justification for why such a reminder notice is needed. Courts that have denied requests for reminder notices have done so upon finding them unnecessary. See, e.g., Guzelgurgenli v. Prime Time Specials Inc., 883 F.Supp.2d 340, 357–58 (E.D.N.Y.2012) (denying request for reminder notice because plaintiff failed to identify any reason why such reminder notice was necessary under the particular circumstances of the case).

Finally, the notice period should be limited to 45 days, not 60 days.  This encourages prompt return of the consent forms by prospective class members.

Consistent with the above, should the Court decide to issue notice, Defendant requests that the Court use the notice that Defendant has attached as Exhibit 11.

## V.    Conclusion

Plaintiff improperly seeks to conditionally certify a collective action of Sales Reps who are located in different regions of the United States and worked under different Store Managers and, therefore, worked under different working conditions that affected the alleged off-the-clock work they performed. Plaintiff has failed to provide evidence that she is part of a group of similarly situated potential collective action members who were subject to a single decision, policy or plan violating the provisions of the FLSA.  This is not an appropriate case for conditional certification, and Plaintiff's conditional certification motion should be denied in total.  If the Court does not deny certification outright, the Court cannot and should not certify a class that includes anyone who did not work as a Sales Rep for TCC in Pennsylvania or live in Pennsylvania while working as a Sales Rep for TCC.  Furthermore, for the reasons stated above, to the extent any class is certified, Defendant requests that the timeframe for any notice be limited to the appropriate statute of limitations of two-years, that the additional limitations and procedures requested by Defendant be applied, and that the notice attached as Exhibit 11 be approved.

42087374.1

25