**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **THERESA WEIRBACH and CHARLES ZIMMER, on behalf of themselves and all others similarly situated,**<br><br>*Plaintiffs*,<br>v.<br><br>**THE CELLULAR CONNECTION, LLC,**<br><br>*Defendant*. | **Case No. 5:19-cv-05310-JDW** |

## MEMORANDUM

The Fair Labor Standards Act's opt-in mechanism creates a hybrid remedy, part class action, part mass action. Like a class action, it permits one or more plaintiffs to file a claim in a representative capacity on behalf of other, similarly-situated employees.  It also permits a court to notify potentially affected individuals about the case and give them a chance to participate.  But it differs from a class action, and resembles a mass action, in that it does not permit a court to bind absent class members.  Instead, like a mass action, it requires affected individuals to join the action and participate as party plaintiffs.

The main question before the Court is whether the Supreme Court's decision about specific personal jurisdiction in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) ("*BMS*") applies to FLSA cases.  If so, the only employees who can sue The Cellular Connection, LLC ("TCC"), are its employees who live or work in Pennsylvania. If not, then all of TCC's employees around the country could appear as plaintiffs here.  This question has divided district courts around the country, and no appellate court has yet weighed in. The Court concludes that *BMS* does apply to claims under the FLSA.  It will limit the scope of this case to Pennsylvania plaintiffs.

I.    **FACTUAL BACKGROUND**

    A.    **The Allegations Against TCC**

TCC offers cellphones and related services at retail stores across the United States.  Theresa Weirbach worked as a Sales Representative at a TCC retail location in Allentown, Pennsylvania, from May 2017 to January 2018.  TCC paid her hourly. Charles Zimmer worked as Technical Advisor from July 2017 to June 2018 at TCC retail locations in Sayre, Pennsylvania, and Elmira, New York.  Sales Representatives and Technical Advisors (together "Sales Reps") have similar job duties, including customer service, sales of cellphones and phone service plans, cleaning, and stocking products in the store.

Ms. Weirbach and Mr. Zimmer allege that TCC managers required them and similarly situated Sales Reps to participate in off-the-clock meetings and conferences via phone and a group messaging application called GroupMe.  They also contend that they had to complete work-related paperwork and make bank deposits during off-hours.  They estimate that they worked five to ten unpaid overtime hours per workweek.  TCC does not provide a method for recording such time spent working outside the retail stores, so Sales Reps were not compensated for this time.  Ms. Weirbach and Mr. Zimmer assert that TCC has violated its obligations under the FLSA.

TCC contends that it prohibits employees from working off-the-clock and does not require its employees to use any group messaging application outside of its retail locations or after working hours.  TCC also asserts that employees are unable to perform any meaningful work-related tasks while outside of the store.  However, in the event that work is performed outside a store, TCC claims that it adjusts employees' time records to ensure that it pays them for all hours worked.

B.      **Procedural History**

Ms. Weirbach filed a complaint in this action on November 12, 2019.  On February 28, 2020, Ms. Weirbach filed an amended complaint that added Mr. Zimmer as a plaintiff.  Since Ms. Weirbach filed the original complaint, approximately 22 other individuals have filed opt-in notices.  The opt-in plaintiffs come from several different states around the country.  Ms. Weirbach filed a motion for conditional certification on February 14, 2020.  The Court heard argument on that motion on August 4, 2020.

## II.     LEGAL STANDARD

The FLSA provides that an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" and that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  The Third Circuit embraces a two-tiered certification process for FLSA collective actions: a more lenient standard for conditional certification; and a stricter standard for final certification.  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 535-36 (3d Cir. 2012).

Conditional certification is not a true certification, but rather "the district court's exercise of [its] discretionary power … to facilitate the sending of notice to potential class members[.]"  *Id.* at 536 (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011)).  "The Court does not evaluate the merits of a case when ruling on a motion for conditional certification." *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 604 (E.D. Pa. 2019) (citation omitted).  Thus, the court does not weigh the evidence or resolve factual disputes during the initial inquiry.  *See Jordan v. Meridian Bank*, No. 17-cv-5251, 2019 WL 1255067, at *11 (E.D. Pa. Mar. 19, 2019)*; Holley v. Erickson Living*, No. 11-cv-2444, 2012 WL 1835738, at *4 n.4 (E.D. Pa. May 21, 2012).

3

If the plaintiffs meet this lenient standard and the court grants conditional certification, "[t]he 'sole consequence' … is the dissemination of court-approved notice to potential collective action members." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

For conditional certification, the Third Circuit has adopted the "modest factual showing" standard, under which a named plaintiff must produce some evidence—"beyond mere speculation—to demonstrate a 'factual nexus' between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4). Relevant factors include, but are not limited to, whether the plaintiffs (1) are employed in the same department, division, and location; (2) advance similar claims; (3) seek substantially the same form of relief; and/or (4) have similar salaries and circumstances of employment. *Carr v. Flowers Foods, Inc.*, No. 15-cv-6391, 2019 WL 2027299, at *4 (E.D. Pa. May 7, 2019) (citation omitted).

Notably, at the initial certification stage, the Court need not determine conclusively whether the FLSA collective is viable. In particular, the Court should defer questions about whether individualized determinations will predominate and render the case unsuitable for collective action to the second step of the certification process. *See Rocha v. Gateway Funding Diversified Mortgage Servs., L.P.*, No. 15-cv-482, 2016 WL 3077936, at *10 (E.D. Pa. June 1, 2016). Accordingly, the Court will assess any dissimilarities among Sales Reps, which might exclude a potential collective member, at the second step of certification. *See, e.g.*, *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352-53 (W.D. Pa. 2018).

### III.    ANALYSIS

#### A.    Conditional Certification

Ms. Weirbach and Mr. Zimmer seek conditional certification of an FLSA collective consisting of:

> All non-exempt hourly retail associates (including Sales Representatives, Technical Advisors and similarly titled employees) employed by TCC at any retail store location throughout the United States on or after November 12, 2016 to the date of judgment of this action, who have not been paid for all overtime hours worked.

(ECF No. 28 ¶ 20.)   The Court concludes that they have made the modest factual showing necessary for conditional certification of a collective.

All members of the proposed collective worked as Sales Reps and were paid hourly.   Ms. Weirbach, Mr. Zimmer, and six other Sales Reps submit declarations that TCC managers required them to review and respond to work-related communications on GroupMe when they were not clocked-in or were away from the stores where they worked.   They also state that TCC directed them to make bank deposits after clocking-out.   They provide names of other employees from the same locations who were subject to the same requirements.   They each assert that TCC did not provide them with a method to record their off-the-clock time, despite the fact that TCC managers directed employees to perform this after hours work and knew they were doing so.   These types of sworn statements from plaintiffs and others, attesting to personal knowledge of other co-workers subjected to similar practices, satisfy the modest burden for conditional certification.   *See Garcia*, 387 F. Supp.3d at 615.   The claims in the amended complaint are similar to the claims that members of the collective would assert: they had to perform off-the-clock work, had no way of

recording it, and did not get paid for it.  All members of the collective will seek the same time type of relief.

TCC submitted an extensive factual record taking issue with these allegations.  But this is not the time for such disputes.  At the conditional certification phase, the Court need only determine whether there is a modest evidentiary showing of similarity.  If there is, then the Court will certify the collective.  TCC will have its chance to rebut the claims.  But that time is not now.

TCC also argues that the Court should not certify claims concerning off-the-clock work. The fact that determining alleged liability and damages in an off-the-clock case may prove fact-intensive or individualized does not weigh against conditional certification at this stage of the proceedings.  Many courts have granted conditional certification in cases where plaintiffs alleged that they were not paid for off-the-clock work.  *See, e.g.*, *Alvarez v. BI Inc.*, No. 16-cv-2705, 2018 WL 2288286, at *6 (E.D. Pa. May 17, 2018); *Viscomi v. Diner*, No. 13-cv-4720, 2016 WL 1255713 (E.D. Pa. Mar. 31, 2016); *Titchenell v. Apria Healthcare Inc.*, No. 11-cv-563, 2011 WL 5428559, at *7 (E.D. Pa. Nov. 8, 2011); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60 (E.D. Pa. 2009).

The decisions on which TCC bases its argument are not on point because they arise under Rule 23's class certification standards.  In *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019), the Third Circuit considered whether to certify a class under Rule 23 in an off-the-clock wage-and-hour case under New Jersey law.  The evidentiary burden for class certification under Rule 23 is much higher than it is for conditional certification, however. *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) also dealt with certification standards under Rule 23. It was also an antitrust

case. The process of determining damages in an antitrust case—which often requires expert testimony to construct a model of a but-for world—is far more complex than in this case.

## B.    Scope of the Collective

### 1.    Personal jurisdiction

TCC argues that the Court cannot conditionally certify individuals over whose claims it does not have personal jurisdiction.  As an initial matter, the Court concludes that it must tackle this question now, not defer it to the second stage of certification.  Courts should only authorize notice to individuals who might be in the collective.  *See Halle*, 842 F.3d at 224 (notice goes to "potential collective action members").  If the Court authorized notice to individuals who cannot be in the collective, it would only sow confusion.  Thus, the Court must tackle the question now, not later in the case.

In a federal question case like this, the 5th Amendment's due process clause fixes the limits of the Court's personal jurisdiction.  *See Max Daetwyler Corp. v. Meyer*, 862 F.2d 290, 293 (3d Cir. 1985).  A federal court cannot exercise personal jurisdiction over a defendant unless a statute authorizes service of a summons on the defendant, because it is the service of process that enables a court to exercise personal jurisdiction over a defendant.  *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  Unlike some federal statutes, the FLSA does not authorize nationwide service of process.  Therefore, service can only be effective to the extent a Pennsylvania state court of general jurisdiction could exercise jurisdiction over TCC.  *See* Fed. R. Civ. P. 4(k).  Pennsylvania's long arm statute permits a Pennsylvania court to exercise jurisdiction to the full extent allowable under the 14th Amendment's due process clause.  *See* 42 Pa.C.S.A. § 5322(b).  So, the inquiry collapses into whether the Court can exercise personal jurisdiction under the 14th Amendment.

Under the 14th Amendment, two types of personal jurisdiction are possible: general jurisdiction and specific jurisdiction. General jurisdiction over a corporation exists where the company is incorporated and where it maintains its principal place of business. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014). Plaintiffs do not argue that TCC is subject to general jurisdiction in Pennsylvania. In order for a court to exercise specific jurisdiction, on the other hand, the "suit must arise out of or relate to the defendant's contacts with the forum." *BMS*, 137 S.Ct. at 1780. That is, there must be a connection between the defendant's activities in the forum and the claims in the case. The parties agree that the Court has specific jurisdiction over TCC for purposes of Ms. Weirbach's and Mr. Zimmer's claims. They also agree that the Court would not have specific personal jurisdiction over TCC to hear claims that only out-of-state plaintiffs assert.

In *BMS*, the issue before the Supreme Court was whether a California state court could exercise specific personal jurisdiction over a company when some in-state plaintiffs joined with out-of-state plaintiffs to assert products liability claims. A group of plaintiffs, consisting of 86 California residents and 592 residents of 33 other states, filed eight separate complaints in California state court. All the complaints asserted claims under California law. *BMS*, 137 S.Ct. at 1778. The Supreme Court held that the California court did not have jurisdiction over the defendants for the out-of-state plaintiffs' claims, even though the out-of-state plaintiffs suffered the same harms from the same product and the same conduct. *See id.* at 1781.

Although district courts around the country have split on the issue,[1] the Court concludes that the decision in *BMS* means this Court cannot exercise personal jurisdiction over the out-of-

---

[1] *Compare, e.g.*, *McNutt v. Swift Transportation Co. of Arizona, LLC*, No. 18-cv-5668, 2020 WL 3819239, at *7 (W.D. Wash. July 7, 2020); *White v. Steak N Shake, Inc.*, No. 20-cv-232, 2020 WL 1703938, at * 4 (E.D. Mo. Apr. 8, 2929); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 58-59 (D. Mass. 2018); *and Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp.3d 845, 850 (N.D. Ohio 2018) *with Waters v. Day & Zimmerman NPS, Inc.*, -- F. Supp.3d --, 2020 WL

state plaintiffs' claims.  Opt-in plaintiffs under the FLSA are no different from the out-of-state plaintiffs who joined the cases at issue in *BMS*.  They are real parties in interest who have joined with an in-state plaintiff to pursue claims based on similar conduct that occurred somewhere else. *BMS* holds that a court cannot exercise personal jurisdiction for such claims.

Some courts have distinguished FLSA collective actions from the mass action at issue in *BMS* by noting that each plaintiff in a mass action has his or her own claim against the defendant, whereas an FLSA action is a case between the named plaintiff and the defendant.  *See, e.g., Waters*, 2020 WL 2924031, at * 4.  The Court disagrees with that analysis.  The FLSA makes opt-ins parties to the lawsuit.  The statute states that no "employee shall be a **party** plaintiff to any such action unless he gives his consent in writing to become such a **party** and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b) (emphasis added).  Section 216(b) is a "rule of joinder giving legal status to individual opt-in plaintiffs."  *McNutt*, 2020 WL 3819239, at *7 (citing *Roy*, 353 F. Supp.3d at 58-59).  Thus, every opt-in plaintiff has party status.  In that sense, the opt-ins are no different from the various plaintiffs in *BMS*.  Indeed, the existence of a collective action depends on the active participation of opt-in party plaintiffs.  *See Halle*, 842 F.3d at 224.

The FLSA's language also undermines Plaintiffs' argument that because the FLSA permits representative actions, it must permit out-of-state plaintiffs to bring claims.  *See, e.g.*, *Turner*, 2020 WL 544705 at * 3 (adopting same logic). Unlike a class action with a representative plaintiff who

---

2924031, at * 4 (D. Mass. June 2, 2020); *Warren v. MBI Energy Svcs., Inc.*, No. 19-cv-800, 2020 WL 937420, at * 6 (D. Colo. Feb. 25, 2020); *Turner v. Concentrix Svcs., Inc.*, No. 18-cv-1072, 2020 WL 544705, at * 3 (W.D. Ark. Feb. 3, 2020); *Meo v. Lane Bryant, Inc.*, No. 18-cv-6360, 2019 WL 5157024, at * 12 (E.D.N.Y. Sept. 30, 2019); *Garcia v. Peterson*, 319 F. Supp.3d 863, 880 (S.D. Tex. 2018); and *Swamy v. Title Source, Inc.*, No. 17-cv-1175, 2017 WL 5196780, at * 2 (N.D. Cal. Nov. 10, 2017).

proceeds on behalf of absent class members, the opt-in plaintiffs in an FLSA have status as parties. *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 123 (3d Cir. 2018).  Plaintiffs' argument flies in the face of this statutory language.

Some district courts that have declined to extend *BMS* to FLSA collective actions have pointed to the analysis in *BMS* that focused at the "level of the suit."  *See, e.g.*, *Waters* 2020 WL 2924031 at * 4; *Warren*, 2020 WL 937420 at * 6.  Those courts draw a distinction between an FLSA case, in which there is one suit, and a mass action where there are many individual suits. But in *BMS*, there were not hundreds of individual suits.  There were eight, because the plaintiffs amalgamated themselves in a few complaints. Many, if not all, of those suits included at least one California resident as a plaintiff. Thus, if one looked at the level of the "suit' in those cases, they would have been proper. The issue, however, was whether individual party plaintiffs could maintain their claims against a common defendant, just as it is here.

District courts have also suggested that imposing a territorial limit on FLSA cases is at odds with Congress's purpose in enacting the statute.  *See, e.g., Turner*, 2020 WL 544705 at * 3; *Warren*, 2020 WL 937420 at * 6.  The Court disagrees, for two reasons.  First, nothing about a territorial limit prevents a nationwide collective action.  The plaintiff just has to file the case where the defendant is at home.  For claims about an employment policy that exists across several states, plaintiffs' counsel will have the appropriate economic incentive to pursue those claims regardless of the federal court that must hear it.  So, plaintiffs will not be shut out of court.  In addition, it is significant that Congress did not include a nationwide service of process provision in the FLSA. When Congress knows how to provide a remedy but does not do so, Courts should infer that Congress's decision was intentional. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996). In 1914, twenty-four years before passing the FLSA, Congress provided for nationwide service of

process in the Clayton Act.  *See* 15 U.S.C. § 22.  The lack of a similar provision in the FLSA suggests that Congress intended to limit where nationwide actions can be brought.  The Court concludes that Congress did not intend to subject employers to nationwide collection actions wherever they had employees.

The Court acknowledges that in *BMS*, the Supreme Court expressed concern that if one state could expand its jurisdictional reach, it could impinge on the sovereignty of another state that had an interest in regulating the dispute. That concern is not present here because the only sovereign is the United States, which adopted the FLSA nationwide.  That difference is significant, and it makes this question a close call. But ultimately, it does not tip the scales.

### 2.    Other proposed limits on scope

In addition to a jurisdictional limit, TCC asks the Court to limit the scope of any collective to non-managerial employees.  The Court will not do so at this phase of the litigation.  It is not clear to the Court whether managers are exempt or, if not, whether they have to perform off-the-clock work.  However, as Plaintiffs point out, many managers likely started as Sales Reps and might therefore be members of the collective.  Thus, excluding managers at this point could create more confusion than it will resolve.  The Court therefore declines to do so.  TCC can argue that managers are not similarly situated at the next phase of the case.

### C.    Form of Notice

Once a court conditionally certifies a collective action, it possesses discretion to provide court-facilitated notice to proposed plaintiffs.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  Taking the Parties' requests into account, the Court will impose certain conditions on the form and provision of the notice.  Those conditions are set forth in the Order accompanying this Memorandum.

**IV.     CONCLUSION**

The Court will conditionally certify a collective action, but only for TCC employees who live or work in Pennsylvania.  The Court does not have personal jurisdiction for claims of other Sales Reps.  An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated:  August 12, 2020